1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                    FOR THE EASTERN DISTRICT OF CALIFORNIA

8  ROY LEE JOHNSON,

9            Plaintiff,                    No. 2:07-cv-2031 FCD JFM (PC)

10      vs.

11
   SOLANO COUNTY SHERIFFS
12 DEPARTMENT, et al.,

13           Defendants.          FINDINGS & RECOMMENDATIONS

14 _____/

15          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

16 42 U.S.C. § 1983.  Before the court is a motion for summary judgment brought on behalf of

17 defendants A. Chandra, J. Walker, C. Collins, B. Elbert and R. Banks.  All of the defendants are

18 officers with the Solano County Sheriff's Department.

19          This action is proceeding on plaintiff's unverified complaint, filed September 27,

20 2007, in which he contends that on November 8, 2005, defendants used excessive force during a

21 routine traffic stop, resulting in testicular damages requiring ongoing medical attention,

22 contusions to his knees and other extremities, and emotional damages.

23          On August 14, 2008, plaintiff filed his opposition to the motion, along with his

24 declaration.  On August 28, 2008, plaintiff filed another opposition and declaration.  The court

25 has compared the two documents; the oppositions are identical, but the August 28, 2008

26 declaration contains two more pages than the August 14, 2008 declaration.  Accordingly, the

1    court has considered plaintiff's August 14, 2008 opposition (docket no. 54) and his declaration

2    filed on August 28, 2008 (docket no. 60).  In addition, on September 24, 2008, plaintiff filed six

3    documents, including an "Affidavit Setting Forth Facts," in opposition to the motion for

4    summary judgment and in support of certain photographs he lodged for the court's consideration.

5    (Docket no. 67.)  The court has considered each of these filings as well.

6              On August 19, 2008, defendants filed a reply.  (Docket No. 56.)  On September

7    25, 2008, defendants filed a response to plaintiff's September 24, 2008 filings.  (Docket No. 66.)

8                    SUMMARY JUDGMENT STANDARDS UNDER RULE 56

9              Summary judgment is appropriate when it is demonstrated that there exists "no

10   genuine issue as to any material fact and that the moving party is entitled to a judgment as a

11   matter of law."  Fed. R. Civ. P. 56(c).

12             Under summary judgment practice, the moving party

13             always bears the initial responsibility of informing the district court
               of the basis for its motion, and identifying those portions of "the

14             pleadings, depositions, answers to interrogatories, and admissions
               on file, together with the affidavits, if any," which it believes

15             demonstrate the absence of a genuine issue of material fact.

16   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

17   nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

18   judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

19   to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

20   after adequate time for discovery and upon motion, against a party who fails to make a showing

21   sufficient to establish the existence of an element essential to that party's case, and on which that

22   party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

23   concerning an essential element of the nonmoving party's case necessarily renders all other facts

24   immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

25   whatever is before the district court demonstrates that the standard for entry of summary

26   judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

3

1    produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

2    Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

3    1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

4    show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

5    as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

6    'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

7            On November 21, 2007, the court advised plaintiff of the requirements for

8    opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v.

9    Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th

10   Cir. 1988).

11                                       ANALYSIS

12   I.  Facts

13        A.  Undisputed Facts[1]

14            Unless otherwise indicated, the following facts are undisputed.

15            Defendants Chandra, Walker, Collins, Elbert and Banks are Deputy Sheriffs with

16   the Solano County Sheriff's Office.  The Solano County Sheriff's Office has adopted procedures

17   regarding the use of force.

18            On November 8, 2005, Defendants Chandra and Collins were located near a Jack

19   In The Box on Grizzley Island Road in Suisun City, CA.  At approximately 2:20 a.m.,

20   defendants Chandra and Collins noticed a Ford Bronco with expired tags.  Defendant Chandra

21   radioed the dispatcher to confirm that the Bronco's tags were expired.  After confirming that the

22   tags were expired, defendants Chandra and Collins initiated a traffic stop.  Defendant Chandra

23   switched on the patrol car's overhead lights and red lights.  Defendants Chandra and Collins

24   /////

25

26        [1]  Unless otherwise noted, the statement of undisputed facts is taken from Defendants'
     Statement of Undisputed Facts, filed May 6, 2008.  (Docket No. 25-3.)

were in a marked patrol car.  The driver of the Bronco, plaintiff, did not respond to the patrol car's overhead lights and front red lamp.

Defendants Chandra and Collins followed the Bronco down Highway 12 to Jackson Street.  Defendant Chandra operated the patrol car's siren when they got onto the Jackson Street exit.  Plaintiff did not respond to the patrol car's siren.  Both defendants Chandra and Collins were in uniform.  Plaintiff continued driving, making several turns.  As they followed the Bronco, defendant Collins notified the dispatcher that they were in pursuit of a Bronco and that the driver would not yield to their lights or siren.

Defendants contend that as they followed the Bronco, Chandra and Collins saw the vehicle go through a stop sign at approximately 45 miles per hour, although the posted speed limit was 35 miles per hour.  Defendants saw plaintiff turn onto Broadway Street, jump the curb, travel between two housing buildings and hit a telephone pole while traveling at approximately 25 miles per hour; this pursuit of the Bronco lasted approximately three minutes.  (Facts No. 16-19)  Although plaintiff states he disputes these facts, numbered 16 - 19 by defendants, plaintiff has not provided any evidence to the contrary.  Thus, the court deems them undisputed.

Plaintiff immediately got out of the vehicle and started running away from the deputies.  Defendant Chandra immediately exited the patrol car and began to pursue plaintiff.  Defendant Collins hesitated momentarily because the Bronco was not secured, and then followed Defendant Chandra in pursuit of plaintiff.  While running from the accident, plaintiff fell once on the roadway and then got up and continued running away from defendant Chandra.

Eventually defendant Chandra caught up with plaintiff.  Defendant Walker had been on patrol heading in the direction of the pursuit when he received radio transmission of a Bronco with expired tags being pursued by sheriffs deputies.  The radio transmission defendant Walker received provided general locations where the pursuit was occurring.  Walker continued in the direction of the pursuit and then received a radio transmission that the pursuit had ended and the deputies were continuing the pursuit on foot.  Defendant Walker turned off his siren and

1  patrol lights and began to drive the area of the streets that were given in the first radio

2  transmission.  As Defendant Walker slowly drove the area, he saw a deputy chasing a figure

3  running down a street towards him.  Defendant Walker exited his vehicle and shouted for the

4  suspect, plaintiff, to stop.  Plaintiff shouted a reply to defendant Walker and kept fleeing.

5  Defendant Walker again ordered plaintiff to stop, and headed on foot towards him.  Plaintiff

6  turned and ran between two houses and tried to jump a fence, but hit the fence and fell to the

7  ground.

8           Defendant Chandra also drew his weapon and ordered plaintiff to get down on the

9  ground and let Chandra see his hands.

10          Defendant Walker has been a defensive tactics instructor for approximately 8 ½

11  years.  The leg-sweep take-down technique that defendant Walker used to take down plaintiff is a

12  POST (Peace Officer Standard Training) approved takedown technique.  The technique

13  defendant Walker used to take-down plaintiff was the same technique defendant Walker has

14  taught and was trained to use.

15          The Fairfield Police Department and medics arrived at the scene of plaintiff's

16  detainment, while defendants Walker and Collins were searching plaintiff.  Once plaintiff was

17  safely restrained, he was escorted without further incident to the hospital to be checked for

18  injuries, before being taken to the jail and booked.  After defendants Walker and Collins had

19  searched and secured plaintiff, defendant Collins left the scene to meet up with defendant

20  Chandra who had returned to the scene of the accident.

21          Defendant Elbert was in the area, in search of the Bronco at the time plaintiff ran

22  his vehicle into the telephone pole.

23          Defendants Elbert and Banks arrived at the scene of the vehicle after plaintiff had

24  already fled the scene on foot.  When defendants Banks and Elbert arrived, they assisted in

25  securing and searching the Bronco and defendant Banks secured the female passenger who was

26  found in the Bronco.

1   Deputy Arabia had a conversation with plaintiff on November 8, 2005 after

2   plaintiff had been arrested.

3       B.  <u>Excessive Force</u>

4           1.  <u>Legal Standards</u>

5       A claim that a law enforcement officer used excessive force during the course of

6   an arrest is analyzed under the Fourth Amendment and an objective reasonableness standard.

7   <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989).  This standard requires consideration of (1) the

8   governmental interest at stake, (2) the need for the use of force, and (3) the amount of force used.

9   <u>See</u> <u>id.</u> at 396; <u>see also</u> <u>Scott v. Harris</u>, 127 S. Ct. 1769, 1778 (2007); <u>Santos v. Gates</u>, 287 F.3d

10  846, 853 (9th Cir. 2002); <u>Deorle v. Rutherford</u>, 272 F.3d 1272, 1280 (9th Cir. 2001); <u>Liston v.</u>

11  <u>County of Riverside</u>, 120 F.3d 965, 976, 976 (9th Cir. 1997).

12      First, an analysis of the governmental interest at stake requires the balancing of a

13  wide range of factors, including "(1) the severity of the crime at issue, (2) whether the suspect

14  pose[d] an immediate threat to the safety of the officers or others . . . (3) whether he [was]

15  actively resisting arrest or attempting to evade arrest by flight, and any other exigent

16  circumstances [that] existed at the time of the arrest."  <u>Deorle</u>, 272 F.3d at 1280 (quoting

17  <u>Headwaters Forest Def. v. County of Humboldt</u>, 240 F.3d 1285 (9th Cir. 2000), <u>vacated and</u>

18  <u>remanded on other grounds</u>, 534 U.S. 801 (2001)).[2]  <u>See also</u> <u>Blankenhorn v. City of Orange</u>, 485

19  F.3d 463, 477 (2007).

20  /////

21

22      [2]  In <u>Deorle</u>, the plaintiff had been shot in the head by police with a lead-filled beanbag,

23  removing his left eye and lodging pieces of lead shot in his skull.  At the time police were
    investigating a call of a suspect's "peculiar behavior."  <u>Deorle</u>, 272 F.3d at 1280.  Based on the

24  objective facts and circumstances of the case, the court determined that it was clear from the
    suspect's behavior that he was emotionally disturbed, unarmed and not a danger to others, and

25  that there was no immediate need to subdue him.  <u>Id.</u> at 1282-83.  The court held that it was not
    enough for an officer to simply state that he feared for his safety or the safety of others; there

26  must be objective factors to justify such a concern.  <u>Id.</u> at 1281.  The court concluded that under
    the facts in that case, the governmental interest was not substantial.

1        Second, the court considers whether there was a need for the use of the force that

2  was employed.  It has been explained that the need for the force used is the essence of the

3  <u>Graham</u> objective reasonableness analysis.  <u>Liston</u>, 120 F.3d at 976.  "'The force which was

4  applied must be balanced against the <u>need</u> for that force:  it is the need for force which is at the

5  heart of the <u>Graham</u> factors.'"  <u>Id.</u> (quoting <u>Alexander  v. City and County of San Francisco</u>, 29

6  F.3d 1355, 1367 (9th Cir. 1994)).  <u>See</u> <u>also</u> <u>Headwaters Forest Def. v. County of Humboldt</u>, 276

7  F.3d 1125, 1130 (9th Cir. 2002) (applying this same analysis in determining that it was

8  unreasonable to use pepper spray repeatedly on nonviolent, environmental protestors when such

9  force was unnecessary to subdue, remove, or arrest the protestors) (amended opinion).

10        Third, the court considers the amount of force used.  "Force is excessive when it

11  is greater than is reasonable under the circumstances."  <u>Santos</u>, 287 F.3d at 854 (citing <u>Graham</u>,

12  490 U.S. 386).  For non-lethal force, "the degree of force used . . . is permissible only when a

13  strong governmental interest compels the employment of such force."  <u>Deorle</u>, 272 F.3d at 1280.

14  As has been recognized:

> 15  Although it is undoubtedly true that police officers are often forced
> to make split-second judgments, and that therefore not every push
> 16  or shove, even if it may seem unnecessary in the peace of a judge's
> chambers is a violation of the Fourth Amendment, it is equally true
> 17  that even where some force is justified, the amount actually used
> may be excessive.

18

19  <u>Santos</u>, 287 F.3d at 853 (internal quotations and citations omitted).  In determining whether the

20  force used is excessive it is appropriate to consider whether a warning was given before force

21  was used.  <u>See</u> <u>Deorle</u>, 272 F.3d at 1285 ("Less than deadly force that may lead to serious injury

22  may be used only when a strong governmental interest warrants its use, and in such

23  circumstances should be preceded by a warning, when feasible.")

24        2.  Defendants Banks, Elbert and Chandra

25        It appears plaintiff concedes his claims as to defendants Banks, Elbert and

26  Chandra.  In his opposition and declaration, plaintiff contends that it was defendants Walker and

1  Collins who used excessive force against him.  (Id., Docket Nos. 60, 67-2, 67-4.)  Defendants

2  Banks, Elbert and Chandra provide declarations confirming they had no physical contact with

3  plaintiff during the arrest at issue.  (Id., Docket Nos. 31, 28, 29.)  Indeed, defendants Banks and

4  Elbert were not present at the time plaintiff was being secured by defendants Collins and Walker.

5  (Banks Decl. at 2; Elbert Decl. at 2 [Docket Nos. 31 & 28].)  Moreover, during the preliminary

6  hearing on the underlying criminal charges, held on January 5, 2006, defendant Chandra testified

7  that he did not have any physical contact with petitioner, nor did he kick plaintiff.  (Pl.'s

8  September 24, 2008 filing (RT at 18)(Docket No. 67).)  Plaintiff has provided no evidence to

9  rebut these declarations or testimony.  Accordingly, defendants' Banks, Elbert and Chandra are

10  entitled to summary judgment.

11             3.  Defendants Walker and Collins

12             Defendants contend that they are entitled to summary judgment because plaintiff

13  has failed to demonstrate that defendants Walker and/or Collins were the cause of the injuries to

14  plaintiff's testicles.  Defendants argue that plaintiff may have suffered these injuries from (a) the

15  motor vehicle accident, when his car hit a telephone pole, (b) when plaintiff fell in the roadway

16  as he ran away from the accident, (c) during his attempt to jump a fence, when he hit the fence

17  and fell to the ground, or (d) during the take-down procedure.

18             However, in his initial declaration, plaintiff states:

19             On November 8, 2005, I was subjected by two of the above-named
             defendants to this cause of action, by the use of excessive force
20             when they had their guns drawn on me, while I had been stopped
             and not a threat to anyone, I was then jumped, trip[ped], tackle[d]
21             by one of those defendants WALKER when another defendant
             COLLINS, came and jumped plaintiff, and they both used more
22             excessive force against me.

23  (August 28, 2008 Decl. at 1.)  Plaintiff also states under penalty of perjury that the "sheriff's

24  deputies repeatedly kick[ed] [him] between [his] legs amongst other places."  (Pl.'s Declaration,

25  filed September 24, 2008 [Docket No. 67-2].)  In a second declaration, he states his injuries were

26  sustained "while being beaten by Solano County Sheriff's Department deputies, [d]ue to

1   repeatedly punching and kicking [him] between [his] legs while lying on the ground face down."

2   (Pl.'s Declaration, filed September 24, 2008 [Docket No. 67-4].)

3         Plaintiff has also provided testimony of defendant Chandra at the January 5, 2006

4   preliminary hearing.  (Pl.'s September 24, 2008 Affidavit, RT at 17 [Docket No. 67].)  Defendant

5   Chandra testified that plaintiff was stopped against a wall, defendant Walker had his gun trained

6   on plaintiff, and Chandra then drew his gun on plaintiff, too.  (Id.)  Defendant Chandra testified

7   that defendant Walker tackled plaintiff "a good thirty seconds later."  (Id., RT at 17-18.)  After

8   plaintiff was taken to the ground, Chandra testified that defendants Collins and Walker were

9   trying to get plaintiff's hands out in front of him.  (Id., RT at 18.)  Defendant Chandra left the

10  scene immediately to return to the vehicle after not touching plaintiff at all.  (Id. at 18-19.)

11        Plaintiff's declarations are sufficient to attribute the cause of his groin injuries to

12  the actions of defendants Collins and Walker.  Although defendants may argue at trial that

13  plaintiff's injuries were caused by other events on November 8, 2005, they have not provided

14  evidence that his injuries were caused by the minor motor vehicle accident or his two falls during

15  his flight from defendants.  While plaintiff must demonstrate causation at trial, his statements

16  under penalty of perjury are sufficient to raise a triable issue of fact as to whether either or both

17  of these defendants repeatedly kicked him in the groin during the November 8, 2005 arrest and

18  prevent this court from entering summary judgment against him.

19        Plaintiff's contention that defendants repeatedly kicked him in the groin area

20  while he was lying on the ground face down is sufficient to raise a genuine issue of material fact.

21  If a jury finds plaintiff's testimony credible, a reasonable jury could find that repeatedly kicking

22  plaintiff in the groin and testicles was an excessive use of force.  In addition, a reasonable jury

23  could find that there was no need for the use of force at all if plaintiff was lying on the ground

24  face down at the time of the kicking.

25        Although plaintiff does not dispute that defendant Walker used the take-down

26  procedure authorized under the excessive force policy of Solano County, plaintiff contends that

1   after he was on the ground, defendants Collins and Walker repeatedly kicked him.  Because the

2   alleged kicking occurred after the take-down move was performed, his concession of this fact

3   does not warrant the grant of summary judgment as to defendant Walker.

4          Plaintiff 's recent statements that he lost consciousness and had to be revived are

5   problematic, but, as explained above, the question of credibility is not before the court on this

6   motion.

7          C.   State Law Claims

8          In his opposition, plaintiff has attempted to argue he has state law claims which

9   are not defeated by a grant of qualified immunity.  Defendants ask the court to take judicial

10   notice of the Solano County Superior Court order denying plaintiff's application for leave to file

11   a late tort claim.  (Reply at 6 & n.6, citing Johnson v. Solano County Sheriff's Dept., et al., Case

12   No. FCS030310 (Solano County), June 7, 2007 Order.)  Defendants' request will be granted.

13   Because plaintiff failed to timely file a claim under the California Government Claims Act,

14   plaintiff cannot pursue any claims under California state law.

15          Accordingly, IT IS HEREBY ORDERED that defendants' August 19, 2008

16   request to take judicial notice (docket no. 56-2) is granted; and

17          IT IS HEREBY RECOMMENDED that the motion for summary judgment, filed

18   by defendants Banks, Elbert and Chandra on May 6, 2008 (docket no. 25), be granted and they be

19   dismissed from this action; and the motion for summary judgment, filed by defendants Collins

20   and Walker, be denied.

21          These findings and recommendations are submitted to the United States District

22   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

23   days after being served with these findings and recommendations, any party may file written

24   objections with the court and serve a copy on all parties.  Such a document should be captioned

25   "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that

26   /////

1  failure to file objections within the specified time may waive the right to appeal the District

2  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3  DATED:  January 28, 2009.

UNITED STATES MAGISTRATE JUDGE

7  001; john2031.msj